**Patrick KIRSCHNER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 03–97–00786–CR.**

Court of Appeals of Texas, Austin.

July 15, 1999.

Norman E. Lanford, San Marcos, for Appellant.

Marcos Hernandez, Jr., Criminal District Attorney, Shannon M. Fitzpatrick, Assistant District Attorney, San Marcos, for the State.

Before Justices JONES, KIDD and B.A. SMITH.

BEA ANN SMITH, Justice.

A jury found appellant Patrick Kirschner guilty of misapplying more than $500 of funds held in trust under a construction contract for the improvement of real property. *See* Tex. Prop.Code Ann. §§ 162.031(a), .032(b) (West 1995). The jury assessed punishment at imprisonment for ten years and a $10,000 fine, but imposition of the prison term was suspended and Kirschner was placed on community supervision. Kirschner brings forward five points of error contending that the evidence is legally insufficient to sustain the conviction, that the statute under which he was convicted is unconstitutionally vague, and that he was denied his constitutional right to a speedy trial. We will overrule these contentions and affirm the district court's judgment.

## FACTUAL BACKGROUND

On November 11, 1990, Patrick Kirschner, doing business as P & K Construction, contracted to build a house for Dale and Betty Ford in the Eden Ranch subdivision in Comal County for a total cost of $131,074.[1] Construction was to be financed by an $86,000 mortgage loan, with the balance to be paid by the Fords from their personal savings. It was agreed that the initial costs of construction would be paid by the Fords, with loan funding to be used only after their personal funds had been exhausted.

Work began in late December 1990, with the initial draw paid by the Fords on December 21. By July 26, 1991, the Fords had paid Kirschner from their personal funds $47,074 in draw requests and an additional $18,712 for change orders. Draws totaling $80,241 had been paid from loan proceeds; Kirschner would make an

---

1. All amounts in this opinion have been rounded to the nearest dollar.

additional draw of $1500 from the bank on August 16. This money was deposited in P & K Construction's account at Dripping Springs National Bank (the Drippings Springs account). On July 26, Kirschner submitted to the Fords a request for $22,822, to which he attached a hand-written list of labor and material expenses. On August 16, Kirschner presented the Fords a bill for an additional $2931 for materials. After negotiations, the Fords paid Kirschner $24,986 for these additional expenses. This payment was made by three personal checks of $14,500 (dated July 26), $7000 (dated July 29), and $3486 (dated August 16). The July 26 check was deposited in the Dripping Springs account. The latter two checks were deposited in accounts maintained by P & K Construction at Victoria Bank & Trust. At this point, the Fords had paid to Kirschner a total of $172,513.

On September 13, 1991, Kirschner delivered to the Fords yet another bill for labor and materials, this totaling $10,552. The Fords, believing that Kirschner was billing them for materials for which they had already paid and for labor never performed, refused to pay Kirschner and fired him from the job. They later hired another contractor to complete the house at an additional cost of $16,606.

Meanwhile, Patsy Willbourne at Dripping Springs Title Company was attempting to arrange for the final closing of the Ford transaction. Because she had been informed that several vendors had not been paid, and knowing that the lending bank would not agree to permanent financing until all possible liens had been removed, Willbourne asked Kirschner to document all of his expenses relating to the Ford house. On September 26, Kirschner responded with what he called a final cost documentation. In this document, Kirschner listed dozens of laborers, vendors, and subcontractors to whom he claimed to have paid a total of $177,509. Included in the listing were payments to P & K Construction of $15,125 for supervision (appar-

ently the amount Kirschner claimed he was due as general contractor) and $4964 for labor he personally performed. Kirschner also gave Willbourne a list of seventeen subcontractors and vendors he said were still owed amounts totaling $26,205. To substantiate the amounts listed as paid, Kirschner attached photocopies of hundreds of canceled checks written during the months of December 1990 through August 1991. Most of these checks bore no indication when written that they related to the Ford project (or any other). Kirschner testified that he subsequently went through his canceled checks, allocated the checks in question to the Ford project from memory, and made notations to that effect on the canceled checks.

Many of the seventeen unpaid subcontractors and vendors filed liens against the Ford property. The Fords had to pay $21,901 to discharge these liens prior to closing.

## SUFFICIENCY OF THE EVIDENCE

### The Alleged Offense

As they did at trial, both Kirschner and the State have devoted much of their energy on appeal to the question whether Kirschner was shown to have defrauded the Fords. This was not, however, the offense for which Kirschner was indicted and convicted. Thus, before discussing the sufficiency of the evidence, we will review the elements of the offense at issue.

Kirschner was prosecuted for violating chapter 162 of the Texas Property Code. Under this chapter, payments made under a construction contract for the improvement of specific real property, and funds borrowed for the purpose of improving specific real property and secured by a lien on the property, are trust funds. Tex. Prop.Code Ann. § 162.001(a), (b) (West 1995). A contractor who receives or controls such trust funds is a trustee of the funds. *Id.* § 162.002. An artisan, laborer, mechanic, contractor, subcontractor, or materialman who furnishes labor or mate-

rials for the construction of an improvement on specific real property is a beneficiary of any trust funds paid or received in connection with the improvement. *Id.* § 162.003 (West Supp.1999).[2] A trustee who intentionally or knowingly, directly or indirectly retains, uses, disburses, or otherwise diverts $500 or more of trust funds without first fully paying all current or past due obligations incurred by the trustee to the beneficiaries of the trust funds is guilty of misapplying the trust funds. *Id.* § 162.031(a) (West 1995). A trustee who misapplies trust funds with intent to defraud the beneficiaries of the trust is guilty of a felony. *Id.* § 162.032(b).

■ The indictment alleged that Kirschner, doing business as P & K Construction:

> on or about [September 27, 1991] ... knowingly and intentionally, with intent to defraud, directly and indirectly retain[ed], use[d], disburse[d] and otherwise divert[ed] trust funds in an amount of $500.00 or more, held by Patrick Kirschner ... as Trustee, under a Contract to Build House on specific real property, namely: [property description], without first fully paying all current and past due obligations incurred by the Trustee to all artisans, laborers, mechanics, contractors, subcontractors, and materialmen, namely: [twelve named subcontractors and materialmen], incurred in connection with construction for which the funds were received, *and the trust funds not paid were not used by the Trustee Patrick Kirschner ... to pay the actual expenses of Patrick Kirschner ... directly related to the construction....*

We emphasize the last clause of the indictment because it arguably affected the State's burden of proof.

Property Code chapter 162 is derived from former Texas Civil Statute article 5472e. *See* Act of May 15, 1967, 60th Leg.,

R.S., ch. 323, §§ 1, 2, 1967 Tex. Gen. Laws 770. Article 5472e provided that, notwithstanding the trust imposed by the statute for the benefit of mechanics and materialmen, the trustee could use construction funds to pay reasonable overhead expenses directly related to the construction project. This provision was construed to create an exception to the application of the statute in a criminal prosecution. *See McElroy v. State,* 720 S.W.2d 490, 493 (Tex.Crim.App. 1986). Thus, in a prosecution for misapplication of construction trust funds under article 5472e, it was necessary for the State to allege in the indictment and prove beyond a reasonable doubt at trial that the defendant trustee did not use the funds to pay his reasonable overhead expenses. *See id.;* Tex. Penal Code Ann. § 2.02(b) (West 1994). The statutory language construed in *McElroy* was incorporated into Property Code section 162.031 upon its adoption. *See* Act of May 26, 1983, 68th Leg., R.S., ch. 576, sec. 1, § 162.031, 1983 Tex. Gen. Laws 3475, 3721–22.

Section 162.031 was significantly amended in 1987. Under the amendment, the exception became an affirmative defense: "It is an affirmative defense to prosecution ... that the trust funds not paid to the beneficiaries of the trust were used by the trustee to pay the trustee's actual expenses directly related to the construction or repair of the improvement...." Tex. Prop.Code Ann. § 162.031(b) (West 1995). Unlike an exception, an affirmative defense need not be negated in the indictment, and the burden is on the defendant to prove the affirmative defense by a preponderance of the evidence. *See* Tex. Penal Code Ann. § 2.04(b), (d) (West 1994).

■ Although this cause arose after the 1987 amendment, the indictment alleged that Kirschner did not use the trust funds to pay his actual expenses related to the construction of the Ford house. That is, the State's pleading negated the affirma-

---

2. In a 1997 amendment, the word "artisan" was substituted for "artist" in section 162.003. *See* Act of May 28, 1997, 75th Leg., R.S., ch. 1018, § 2, 1997 Tex. Gen. Laws 3721.

tive defense as if it were still an exception. This requires us to decide whether the State was bound to prove this allegation, or whether it may be disregarded as surplusage. The general rule is that an unnecessary allegation that describes an essential element of the offense must be proved at trial, but an unnecessary allegation that does not describe an essential element need not be proved. *See Upchurch v. State*, 703 S.W.2d 638, 640 (Tex.Crim.App.1985).

*Upchurch*, like this cause, involved a charging instrument that unnecessarily negated an affirmative defense. The defendant was accused of failing to maintain financial responsibility. The complaint alleged, in addition to the necessary elements of the offense, that the vehicle the defendant was driving was not exempt from the Safety Responsibility Act and was not self-insured under the act. It was agreed that these allegations were unnecessary because these exemptions from the act were affirmative defenses rather than exceptions to prosecution. *See id.* at 639 n. 2. The court of criminal appeals concluded that the State was not bound to prove these unnecessary allegations.

> [T]he complaint's allegation that [the defendant] was not exempt from the penalties of the statute [did not] describe any … element of the offense. The extra matter did not define the offense more narrowly, place it in a specific setting, or describe the method by which it was committed. The conduct comprising the offense would have remained exactly the same regardless of the truth or falsity of the unnecessary matter in the indictment; [the defendant] would still have been operating a motor vehicle without insurance whether he was exempt or not. The unnecessary matter in the complaint did not describe or explain the offense, and was therefore surplusage…. Proof of such surplusage is not required for the conviction to stand.

*Id.* at 641.

The affirmative defense provided for by section 162.031(b) is a justification for what

would otherwise be culpable conduct. Kirschner still would have directly or indirectly retained, used, disbursed, or otherwise diverted trust funds without first paying all current or past due obligations incurred to the beneficiaries of the trust funds even if he had used the funds so diverted to pay actual expenses directly related to the construction of the improvement. As in *Upchurch*, the conduct constituting the alleged offense remains the same regardless of the truth or falsity of the unnecessary allegation negating the affirmative defense. Therefore, we conclude that the allegation Kirschner did not use the funds to pay his actual expenses directly relating to the construction was surplusage the State was not required to prove in order to obtain a conviction.

### Standard of Review

■ When reviewing the legal sufficiency of evidence to sustain a conviction, we must decide whether a rational trier of fact, viewing the evidence in the light most favorable to the verdict, could find beyond a reasonable doubt the essential elements of the offense alleged in the indictment and incorporated in the court's charge. *See Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Geesa v. State*, 820 S.W.2d 154 (Tex.Crim.App. 1991); *Griffin v. State*, 614 S.W.2d 155 (Tex.Crim.App.1981). The district court's charge to the jury in this cause conformed to the allegations in the indictment. Thus, in addition to requiring proof of each element of the offense as alleged, the charge placed the burden on the State to prove beyond a reasonable doubt that Kirschner did not use diverted trust funds to pay his actual expenses directly related to the construction.

In *Malik v. State*, 953 S.W.2d 234, 239–40 (Tex.Crim.App.1997), the court of criminal appeals held that the sufficiency of the evidence was no longer to be measured on appeal against the jury charge actually given. Instead, sufficiency of the evidence

is to be measured according to a hypothetically correct jury charge for the case. In the context of this cause, such a charge is one that does not unnecessarily increase the State's burden of proof. *Id.* at 240. We have determined that, under *Upchurch,* the indictment allegation that Kirschner did not use diverted trust funds to pay his actual expenses directly related to the construction was surplusage that the State was not required to prove to secure a conviction. Therefore, under *Malik,* we will review the sufficiency of the evidence as if the court's jury charge had not required the State to prove this surplusage.

### Current or Past Due Obligations

█ It was necessary for the State to prove that Kirschner retained, used, disbursed, or otherwise diverted trust funds without first fully paying the current or past due obligations he owed the twelve beneficiaries named in the indictment. " 'Current or past due obligations' are those obligations incurred or owed by the trustee for labor or materials furnished in the direct prosecution of the work under the construction contract prior to the receipt of the trust funds and which are due and payable by the trustee no later than thirty days following receipt of the trust funds." Tex. Prop.Code Ann. § 162.005(2) (West Supp.1999). The State offered no evidence as to when ten of the twelve subcontractors and vendors named in the indictment furnished the labor or materials for which they were not paid by Kirschner. Absent this evidence, the State failed to prove that there was a current or past due obligation owed these ten alleged beneficiaries at the time Kirschner received trust funds.

One of the two remaining beneficiaries named in the indictment was Marble Masters of Texas, Inc. The State introduced in evidence copies of four invoices totaling $8413 from Marble Masters for materials used on the Ford construction project.

These invoices reflect delivery of a bathtub ($466) on June 25, 1991, a shower base ($202) on June 27, two vanity tops ($557) on July 31, and kitchen and bathroom cabinets ($7188) on August 1. An employee of Marble Masters testified that these invoices were payable thirty days after delivery. They were not paid by Kirschner, and Marble Masters eventually filed a lien to obtain payment.

The remaining named beneficiary of the trust funds was Overhead Door Company of San Antonio. The State proved that on July 11, 1991, Overhead Door delivered and installed the Fords' garage door, and billed Kirschner on that date for $743. The owner of Overhead Door testified that this bill was payable upon receipt. Kirschner wrote a check for $743 to Overhead Door on September 28, 1991, but later stopped payment on the check. Overhead Door was forced to file a lien to obtain payment.

The evidence further shows that Kirschner made a $4800 draw on the Fords' loan proceeds on June 26, 1991, the day after Marble Masters delivered the bathtub. He also made draws of $5300 on July 22, following delivery of the shower base and after Overhead Door installed the garage door, and of $1500 on August 16, following delivery of the vanity tops and cabinets. In addition, Kirschner received three personal checks from the Fords totaling $24,986 on July 26, July 29, and August 16, 1991.[3] It is undisputed that these payments and loan receipts were trust funds under Property Code chapter 162. At the time Kirschner received these trust funds, some or all of the invoices from Marble Masters and Overhead Door were "current or past due obligations" within the meaning of Property Code section 162.005(2).

### Retention, Use, Disbursement, or Diversion of Trust Funds

█ Clearly, Kirschner did not use the trust funds he received between June 26

---

3. Only the first of these three payments from the Fords, a personal check for $14,500, was deposited in the Dripping Springs account.

and August 16 to pay his current or past due obligations to Marble Masters and Overhead Door. But to prove a misapplication of these funds under section 162.031(a), it was necessary for the State to prove that Kirschner retained, used, disbursed, or otherwise diverted the funds.

Kirschner's final cost documentation of the Ford construction project, prepared at the request of the title company, was introduced in evidence. This documentation included copies of the checks Kirschner wrote on the Dripping Springs account to pay laborers, subcontractors, and vendors for work done and materials supplied on the Ford project. These checks reflect the payments Kirschner made from the Ford construction trust funds.

Bank records introduced in evidence by the State show that Kirschner wrote many other checks on the Dripping Springs account. Some of these checks, such as those to his daughter's private school, are cited by the State as evidence Kirschner misapplied trust funds. But the bank records also show that Kirschner deposited thousands of dollars into the Dripping Springs account from sources unrelated to the Ford contract. Except for the checks identified in Kirschner's final cost documentation, none of the checks written on the Dripping Springs account can be traced to the Fords' trust funds, as opposed to funds deposited from other sources. Relying on Kirschner's own link of these checks to the trust funds, we will limit our search for evidence of misapplication to the checks shown in the final cost documentation. We will further limit our search to those checks written on or after June 26, 1991, because as previously explained, the State did not prove that Kirschner had current or past due obligations before that date.

Kirschner's final cost documentation shows that he wrote dozens of checks

against Ford construction trust funds on or after June 26. Most of these checks were payable to beneficiaries of the trust funds; that is, to persons or businesses shown in the record to have provided labor, services, or materials for the Ford project. There is no evidence these payments constituted a misapplication of trust funds under the statute. There were, however, payments after June 26 to two nonbeneficiaries of the trust: Maria Kirschner, Kirschner's wife, and P & K Construction.

From the Dripping Springs account, Patrick Kirschner wrote five checks totaling $710 to Maria Kirschner, and two checks totaling $1475 to P & K Construction. Kirschner was not questioned about the checks to P & K and there is no evidence regarding their purpose. When asked about the checks he wrote to his wife, Kirschner conceded that she did not perform any work on the Ford project. Kirschner testified that the payments to his wife represented either a portion of his fee under the contract or payment for labor he performed on the project.

The checks to P & K and to his wife were, in effect, payments by Kirschner to himself. Together, they totaled $2185. The trustee of a construction trust cannot simultaneously be a beneficiary of the trust. *See* Op. Tex. Att'y Gen. No. JM–945 (1988). Under the statute, the trustee must justify any payments to himself as being for actual expenses directly relating to the construction. *Id.*[4] Absent such justification, evidence that Kirschner paid $2185 in trust funds to himself without first paying his current and past due obligations to Marble Masters and Overhead Door establishes a misapplication of trust funds under section 162.031(a).

Kirschner disputes this conclusion, arguing that the State was obligated to trace the flow of funds and prove that any ques-

---

4. The Property Code has been amended to provide that the fee paid to a contractor pursuant to a construction contract is not considered trust funds. *See* Tex. Prop.Code Ann. § 162.001(c) (West Supp.1999). This provision applies only to construction contracts signed on or after September 1, 1997.

tionable payments were not in fact payments for his actual expenses directly related to the Ford project. *See McElroy,* 720 S.W.2d at 495. Kirschner's reliance on *McElroy* is misplaced. That case was a prosecution under former article 5472e. As previously discussed, that statute required the State to disprove the exception to prosecution. We have explained that what was then an exception is now the affirmative defense found in section 162.031(b); therefore, the State was not required to disprove the affirmative defense. Instead, the burden was on Kirschner to prove that his failure to pay the beneficiaries was justified.

Viewed in the light most favorable to the verdict, the evidence is sufficient to rationally support the jury's finding that Kirschner misapplied more than $500 of construction trust funds. Points of error one and two are overruled.

### Intent to Defraud

■ The misapplication of construction trust funds is a felony only if it is committed with the intent to defraud the trust beneficiaries. Prop.Code § 162.032(b). A trustee acts with intent to defraud when he retains, uses, disburses, or diverts trust funds with the intent to deprive the beneficiaries of the trust funds. *See* Act of May 30, 1987, 70th Leg., R.S., ch. 578, § 3, 1987 Tex. Gen. Laws 2283 (Tex. Prop.Code Ann. § 162.005(1), since amended). Kirschner argues that the State failed to prove such intent because there is no evidence of deceit or deception on his part. *See Gonzales v. State,* 670 S.W.2d 413, 416 (Tex. App.—Corpus Christi 1984, no pet.).

Once again, the authority on which Kirschner relies was decided under prior law. In any event, *Gonzales* is factually distinguishable. In that case, a contractor stopped payment on a check to a subcontractor after a dispute arose whether the subcontractor had fully performed his obligations. The court of appeals held that under these circumstances, an intent to defraud could not be inferred from the contractor's stopping payment. In the

present cause, Kirschner testified that he stopped payment on his check to Overhead Door because after writing the check he realized that there were insufficient funds in the account.

To the extent Kirschner paid himself from trust funds, there was less money remaining to pay beneficiaries of the trust. The checks Kirschner wrote to his wife and to P & K Construction exceeded the $713 he owed to Overhead Door. The jury could rationally infer that by paying himself from trust funds at a time when he had current or past due obligations to trust beneficiaries, Kirschner intended to deprive the beneficiaries of the trust funds. Point of error three is overruled.

### CONSTITUTIONALITY OF STATUTE

■ Kirschner filed a "motion to quash indictment and alternative motion to declare statute unconstitutional on grounds of vagueness." By this motion, Kirschner urged that section 162.031(b) is unconstitutionally vague on its face because the phrase "actual expenses directly related to the construction or repair of the improvement" is not defined. The motion was overruled, and Kirschner brings forward his vagueness argument in his fourth point of error.

■ To successfully mount a facial vagueness challenge, a party must demonstrate that the statute is impermissibly vague in all its applications. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 497, 102 S.Ct. 1186, 71 L.Ed.2d 362; *Briggs v. State,* 740 S.W.2d 803, 806 (Tex.Crim.App.1987). Kirschner offered no evidence at the hearing on the motion to quash, but instead relied on opinions discussing different language in the predecessor civil statute. Because Kirschner failed to demonstrate that section 162.031(b) was incapable of being applied in a constitutional manner, the district court did not err by overruling the motion to quash.

Insofar as Kirschner's point of error may be construed as a contention that section 162.031(b) is unconstitutionally vague as applied to him, we need not address it. The constitutionality of a statute is not to be determined unless absolutely necessary to decide the case in which the issue is raised. *Briggs,* 740 S.W.2d at 806–07. Kirschner did not request an instruction on the affirmative defense and none was given. We are not called upon to apply section 162.031(b) to the facts of this cause. Point of error four is overruled.

## SPEEDY TRIAL

Kirschner's final point of error is that the district court erred by overruling his motion to dismiss the indictment on the ground that he was denied his Sixth Amendment right to a speedy trial. *See Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *Klopfer v. North Carolina,* 386 U.S. 213, 222–23, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967); U.S. Const. amends. VI, XIV. When reviewing a trial court's decision to grant or deny a speedy trial claim, we defer to the court's findings of fact but review de novo its application of the law to those facts. *State v. Munoz,* 991 S.W.2d 818, 821 (Tex.Crim.App.1999); *Johnson v. State,* 954 S.W.2d 770, 771 (Tex.Crim.App.1997). We must balance four factors: length of the delay, reason for the delay, assertion of the right, and prejudice to the accused. *Barker,* 407 U.S. at 530, 92 S.Ct. 2182; *Johnson,* 954 S.W.2d at 771. No one of these factors is necessary or sufficient in itself to establish a speedy trial violation. *Barker,* 407 U.S. at 533, 92 S.Ct. 2182. Evidence bearing on each factor must be considered and weighed on a case by case basis, and a balance must be struck based on the circumstances of the particular case. *Id.* at 530, 92 S.Ct. 2182.

### *Length of Delay*

The length of the delay has a dual function. First, the delay must be of a length sufficient to raise a presumption of prejudice and thereby trigger further speedy analysis. *Doggett v. United States,* 505 U.S. 647, 652, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). If presumptive prejudice is raised, the length of delay is then considered as it bears on the other factors. *Id.*

Kirschner was first indicted for this offense during the May 1992 term. He was arrested in July 1992 and immediately released on a personal bond. Kirschner was tried five years later; in August 1997. The delay was clearly sufficient to raise a presumption of prejudice.

### *Reason for Delay*

Although it had the burden of justifying the delay, the State offered little evidence on this issue. In its brief, the State says that it requested two continuances due to the complexity of the case and a serious illness in the prosecutor's family, but these facts are not reflected in the record. In any event, the State moved to dismiss the original indictment in December 1994 after Kirschner filed a motion to quash. The motion to dismiss was granted in February 1995, and Kirschner was reindicted under the current cause number in April 1995.

Kirschner filed numerous motions following his reindictment. At least two pretrial hearings were scheduled during 1995, but apparently were never held. The cause was set for trial in February 1996. Kirschner filed a motion for continuance two weeks before the scheduled trial date. No grounds were stated in the motion, which was granted. Kirschner continued to file motions, including a motion to dismiss for want of a speedy trial. A pretrial hearing was conducted in June 1996, at which time the motion to dismiss was considered and overruled. The court did grant Kirschner's request for funds to hire an accountant and investigator to assist the defense. In April 1997, Kirschner's appointed attorney moved to withdraw, citing "ethical considerations." The motion was granted and substitute counsel was

appointed. Trial began four months later, in August 1997.

### Assertion of the Right

Kirschner filed a motion for speedy trial under the original indictment in October 1994. Kirschner did not reassert his speedy trial right until March 1996, when he filed the motion to dismiss for want of speedy trial.

### Prejudice

The testimony at the speedy trial hearing established that the records of four of the subcontractors named in the indictment as unpaid beneficiaries of the construction trust had been lost or destroyed. Kirschner also testified that some of his own records had been lost, and that several named individuals who worked for him on the Ford house had either died or moved in the years since the job was completed. Kirschner did not testify to the importance to the defense of any particular missing witness or document.

### Balancing of Factors

■ While this prosecution for misapplication of construction trust funds was more complicated than the typical third-degree felony case, the five-year delay between the first indictment and Kirschner's trial cannot be justified merely by the complexity of the facts. Kirschner moved for a speedy trial in October 1994 and he testified that the defense was ready for trial at that time. But Kirschner also filed a motion to quash the indictment in December 1994, persuading the State to seek a new indictment. Kirschner did not seek a speedy trial of the new indictment. Instead, the defense filed motions for discovery and for the assistance of investigators and accountants that belie the claim of prior readiness for trial. After the case was set for trial in February 1996, Kirschner asked for and received a continuance. One month after being granted the continuance, Kirschner moved to dismiss for want of a speedy trial. Prosecution was further delayed when Kirschner's first attorney withdrew. In sum, a review of the first three factors demonstrates that prosecution of this cause was tardy, but that Kirschner did not vigorously assert his speedy trial right and that a significant portion of the delay was at Kirschner's behest. There is no evidence that the State deliberately sought to delay this prosecution.

As to prejudice, it is obvious that records were lost or destroyed, witnesses died or moved, and memories faded over the course of five years. But Kirschner, even as he testified to the witnesses he could not find and the records he could not obtain, did not explain why these witnesses or records were important to his defense. In his brief to this Court, Kirschner does not name a single missing witness he would have called or identify a single item of lost evidence he would have introduced at trial. There is, in short, little evidence of prejudice resulting from the delay of Kirschner's trial.

Balancing all relevant factors, we conclude that Kirschner was not denied his Sixth Amendment right to a speedy trial. Point of error five is overruled.

### CONCLUSION

The judgment of conviction is affirmed.