Antoinette M. MORELLI, Appellant,

v.

The STATE of Texas, Appellee.

No. 03–98–00433–CR.

Court of Appeals of Texas, Austin.

Jan. 13, 2000.

Rehearing Overruled Feb. 10, 2000.

Mark A. Clark, New Braunfels, for Appellant.

Dib Waldrip, County and Dist. Atty., New Braunfels, for State.

Before Justices B.A. SMITH, YEAKEL and DALLY.*

CARL E. F. DALLY, Justice (Retired).

Appellant Antoinette M. Morelli was convicted, in a jury trial, of the felony offense of misapplying trust funds of $500 or more of which she was a trustee under a construction contract for the improvement of real property. *See* Tex.Prop.Code Ann. §§ 162.031(a) (West 1995), .032(b) (West Supp.2000). The trial court assessed appellant's punishment at imprisonment for five years and a fine of $5,000. We will sustain appellant's fourth point of error and reverse the judgment of conviction holding that the evidence is legally insufficient to sustain the jury's verdict.

The Texas Constitution provides for liens on property for the benefit of mechanics, artisans, and material men,[1] and statutes provide methods for perfecting property liens for the benefit of mechanics, contractors, and material men. *See* Tex. Prop.Code Ann. ch. 53 (West 1995 & Supp.2000). In addition, the legislature has provided that loan receipts and construction payments made to owners, contractors, and subcontractors are funds to be held in trust for the benefit of any artist, laborer, mechanic, contractor, subcontractor, or material man who furnishes labor or material for the construction or repair of an improvement on specific real property. *See* Tex.Prop.Code Ann. ch. 162 (West 1995 & Supp.2000).[2]

---

* Before Carl E.F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).

1. "Mechanics, artisans, and material men of every class, shall have a lien upon the buildings and articles made or repaired by them for the value of their labor done thereon, or material furnished therefore; and the Legislature shall provide by law for the speedy and efficient enforcement of said liens." Tex. Const. art. XVI, § 37.

2. The 1997 amendments to chapter 162 are not applicable to the instant case. However, we note that the 1997 amendments have sub-

stantially changed the nature of the Texas construction trust statute. The 1997 amendments require a trustee of construction trust funds to segregate the funds and to establish "construction accounts" in specified types of "financial institutions." The amendments also charge the trustee with extensive affirmative duties in the management of the trust funds held in "construction accounts" including the keeping of detailed records and the retention of those records for a specified time. The 1997 amended Texas statute is similar to the New York statute discussed in *In re Kawczynski*, 442 F.Supp. 413 (W.D.N.Y.1977).

■ Appellant was prosecuted under the provisions of Chapter 162 of the Texas Property Code. The indictment charged that appellant on or about the 6th day of May 1994 through the 1st day of January 1995,

> acting as a trustee of trust funds in her capacity as the general contractor employed by Richard and Beatrice Trippe to build a residence on Lot 39R, Fair Oaks Ranch, Unit 2, also known as 7721 Intrepid, Fair Oaks Ranch, intentionally or knowingly and with intent to defraud, misappl[ied] said trust funds, to-wit: construction payments amounting to $500.00 or more, by directly or indirectly retaining, using, disbursing, or otherwise diverting said trust funds without first fully paying all the current or past due obligations incurred by her as trustee to the beneficiaries of the trust funds, to-wit: subcontractors; [3]

■ In the application paragraph of the trial court's jury instructions the jury was charged:

> Now if you find from the evidence beyond a reasonable doubt that on or about the 6th day of May, 1994, through the 1st day of January, 1995, in Comal County, Texas, the defendant, Antoinette Morelli, did then and there, acting as a trustee of trust funds in her capacity as the general contractor employed by Richard and Beatrice Trippe to build a residence on Lot 39R, Fair Oaks Ranch, Unit 2, also known as 7721 Intrepid, Fair Oaks Ranch, intentionally or knowingly or with intent to defraud, misapply said trust funds, to-wit: construction payments amounting to $500.00 or more, by directly or indirectly retaining, using, disbursing, or otherwise diverting said trust funds without first fully paying all the current or past due obligations [4] incurred by her as trustee to the beneficiaries of the trust funds, to-wit: subcontractors, as charged in the indictment, you will consider the affirmative defense which follows.

> Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the defendant.

Chapter 162 of the Texas Property Code, as applicable to this prosecution, provided that payments made under a construction contract for the improvement of specific real property and funds borrowed for the purpose of improving specific real property and secured by a lien on the property are trust funds. *See* Tex.Prop. Code Ann. § 162.001(a), (b) (West Supp. 2000). An owner or contractor who receives or controls such trust funds is a trustee of the funds. *See id.* § 162.002 (West 1995). An artist, laborer, mechanic, contractor, subcontractor, or material man who furnishes labor or materials for the construction or repair of specific real property is a beneficiary of any trust funds paid or received by a trustee in connection with the improvement. *See id.* § 162.003 (West 1995). A trustee who intentionally, or knowingly, directly or indirectly retains,

---

**3.** The indictment did not name any of the subcontractors who were the beneficiaries of the trust funds that were alleged to have been fraudulently misapplied. These beneficiaries were the actual victims of the alleged offense. However, the failure to allege the names of the victims of the offense was not timely challenged by a motion to dismiss or to quash the indictment. Under controlling law the indictment was sufficient to give the trial court jurisdiction. *See* Tex. Const. art. V, § 12; Tex.Code Crim.Proc.Ann. art. 1.14(b) (West Supp.2000); *Rodriguez v. State,* 799 S.W.2d 301, 302–303 (Tex.Crim.App.1990); *Studer v. State,* 799 S.W.2d 263, 267–72 (Tex.Crim.App. 1990); *State v. Smith,* 957 S.W.2d 163, 164–

65 (Tex.App.—Austin 1997, no pet.); *Alexander v. State,* 820 S.W.2d 821, 822–23 (Tex. App.—Waco 1991, pet. ref'd).

**4.** The jury was instructed on several statutory definitions. However, the jury should have been, but was not, instructed on the *statutory* definition of "current and past due obligations." *See* Tex.Prop.Code Ann. § 162.005(2) (West Supp.2000). Because there was not an objection to the omission of this statutory definition nor a request that it be given, the error was waived in the trial court.

uses, disburses, or otherwise diverts $500 or more of trust funds without first fully paying all current or past due obligations incurred by the trustee to the beneficiaries of the trust funds is guilty of misapplying the trust funds. *See id.* § 162.031(a) (West 1995). A trustee who misapplies trust funds with intent to defraud the beneficiaries of the trust is guilty of a third degree felony. *See id.* § 162.032(b) (West Supp.2000). A trustee acts with "intent to defraud" when the trustee retains, uses, disburses, or diverts trust funds with the intent to deprive the beneficiaries of trust funds. *See id.* § 162.005(1)(A). It is an affirmative defense to prosecution or other action brought for the misapplication of construction funds if the funds not paid to the beneficiaries of the trust were used by the trustee to pay the trustee's actual expenses directly related to the construction or repair of the improvement. *See id.* § 162.031(b) (West 1995). "Current or past due obligations are those obligations incurred or owed by the trustee for labor or materials furnished in the direct prosecution of the work under the construction contract prior to the receipt of the trust funds and which are due and payable by the trustee no later than 30 days following the receipt of the trust funds." *Id.* § 162.005(2) (West Supp.2000).

We have found only one reported case of a criminal prosecution under chapter 162 as it applied to this case at the time of trial. *See Kirschner v. State,* 997 S.W.2d 335 (Tex.App.—Austin 1999, pet. ref'd). However, because debts that result when trust funds are diverted with intent to defraud are not dischargeable in bankruptcy, federal courts have often been required to construe the construction trust fund statutes of many states including the Texas statute.[5]

The Texas construction trust fund statute, as amended and as applicable to this case, "falls far short of . . . creating classic

express trust arrangements." *In re Nicholas,* 956 F.2d 110, 113 (5th Cir.1992). The nature of the Texas construction trust statute was examined and explained in *Boyle v. Abilene Lumber Inc.,* 819 F.2d 583, 585–87 (5th Cir.1987).

> The actual language of the Texas statute, we emphasize, provides only for a criminal penalty and then only if the holder of construction funds "retains, uses, disburses, or otherwise diverts trust funds without first fully paying all obligations" to the named classes of creditors *"with intent to defraud."* The statute contains no provision requiring the fund holder to segregate funds by source and project; it does not prohibit the commingling of funds; it does not bar use of funds provided for one project to pay bills incurred on another project if this is done without an "intent to defraud"; and it does not prohibit a fund holder from paying, without any fraudulent intent, creditors on one project with surplus funds left over from earlier work and then using the funds provided for that later project on still other work. In short, the statute does not create "red," "blue," and "yellow" dollars each of which can only be used for the "red," "blue," or "yellow" construction project.

*Boyle,* 819 F.2d at 586.

> The Fifth Circuit construed this statute in *In re Nicholas,* 956 F.2d 110 (5th Cir.1992). The court found that the Texas statute, unlike similar statutes in Oklahoma and Arizona, did not of itself create an express trust, because it did not call for the segregation of funds in a separate, traceable account. Instead, the Texas statute excuses 'misapplication' if the facts demonstrate that the funds were used to pay 'actual expenses directly related to the construction or repair of [an] improvement.' *Id.* at 112–14; *see also* Tex.Prop.Code Ann. § 162.031(b) (West 1995).

---

5. The different types of construction trust fund statutes of many states, including the Texas statute, were discussed and classified in

*In re Baird,* 114 B.R. 198 (Bkrtcy. 9th Cir. 1990).

*In re Faulkner,* 213 B.R. 660, 665 (Bankr. W.D.Tex.1997).

While he was chairman of the State Affairs Committee, Senator John T. Montford asked the Attorney General for an opinion interpreting the 1987 amendments to chapter 162 of the property code. One of the questions asked was, "Do 'expenses directly related to the construction or repair of the improvement under Section 162.031(b), Property Code, include the trustee's overhead and other expenses which, though not readily traceable to a particular job, are necessary to obtaining or completing the job (e.g., office rent, employee salaries, worker's compensation insurance, communications bill, etc.).'" After reviewing the former statute and comparing it with the 1987 amendments and floor discussions of the amendments in both the House and the Senate, the Attorney General answered: "In light of the foregoing, we conclude, in response to your second question, that the words of Section 162.031 'actual expenses directly related to the construction or repair of the improvement,' include overhead and other expenses which, though not readily traceable to a particular job, are necessary to obtaining or completing the job, so long as the expenses are 'actual,' i.e., have in fact been incurred." Tex. Att'y Gen.Op. JM–945 (1988).[6]

The federal court opinions and the opinion of the Attorney General are instructive and aid us in the interpretation of the statute as it applies in this case.

■ In her fourth point of error, appellant urges that the evidence is legally insufficient to support the jury's verdict. In reviewing the legal sufficiency of the evidence, the test is whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Staley v. State,* 887 S.W.2d 885, 888 (Tex.Crim. App.1994); *Geesa v. State,* 820 S.W.2d 154, 156 (Tex.Crim.App.1991); *Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Crim.App.1988).

In this case, as in the *Kirschner* case, the prosecutors proceeded both at trial and on appeal on a theory that the owners were the victims of the offense.[7] *See Kirschner,* 997 S.W.2d at 338. However, under the provisions of Chapter 162, the subcontractors and material men, not the owners, are the beneficiaries of the trust and the victims of the offense. The case was also prosecuted on the mistaken theory that Chapter 162 provided for a classic trust, and that therefore, the "red," "blue" and "yellow" trust fund money could only be used on the "red," "blue," and "yellow" project and then only for "sticks and bricks." *See Boyle,* 819 F.2d at 587.

On February 29, 1994, appellant, the owner and sole shareholder of Golden Eagle Custom Homes, Inc., contracted with Beatrice and Richard Trippe to build a house for the Trippes on land that they owned. The Trippes obtained a commitment from a bank for interim financing in the amount of $295,000 to finance the building of a $300,000 house. While building the house, appellant requested several draws from the construction loan. When appellant's requests were approved by the Trippes and after the bank's officers made an on-site physical inspection and verified progress on the project, the bank placed the amount of the draw in the Trippe account. The Trippes then disbursed the

---

6. Appellant made a timely objection to the jury charge and requested a jury instruction that " 'Actual expenses directly related' include overhead and other expenses which, though not readily traceable to a particular job, are necessary to obtaining or completing the job." The requested instruction was denied.

7. The prosecutors have repeatedly referred to the owners as the "victims" of the offense. Under the facts of this case the owners, like the appellant, were actually trustees of the loan receipts.

funds to appellant. On some occasions, to pay for extras or for other reasons, the Trippes gave appellant money from their own non-borrowed funds. Between May 2 and November 29, 1994, appellant received construction funds in the sum of $275,-981.84. Appellant paid subcontractors and material men $245,312 .26 from the trust funds. Overhead and expenses attributable to the Trippe project were shown to be $40,275.98.[8] The contract was terminated before the house was completed. The bank retained $29,500 of the construction funds. Several subcontractors and material men made claims for unpaid materials and labor, and liens totalling $56,-951 were filed against the property.

Much of the evidence relates to the travail suffered by both appellant and the owners in connection with the execution of the project. Beatrice Trippe's incessant presence at the building site, her instructions to subcontractors, and her changes of building plans resulted in appellant's making a written demand that Trippe cease her activities because they were in violation of contractual provisions. Trippe testified that she "was at the house almost every day to make sure that everything happened in a timely manner." Appellant contended that Trippe's activity at the building site increased the cost of the project, caused her to lose control of the project, and caused the early termination of the contract before the house was completed. However, Trippe testified "that she [Morelli] built us a very beautiful house."

The State responds to appellant's fourth point of error arguing, "[a] plethora of examples of how appellant misdirected the use of funds received from the victims indicate the requisite intent to defraud." In its brief the State tells us "[a] brief summary of the evidence upon which the jury could have rationally based its verdict

is found in the undersigned counsel's final argument." We quote from a part of that argument:

And another thing that is important is in fact those job numbers. Those 9306, 9301, those are very important numbers. She wanted you to believe that they were not. They are very important, and even though I don't have to prove that at the beginning of the time that she entered into these contracts that she intended to defraud. I think there is evidence, and some of that evidence is, you know, through the use of the checks with those job numbers, other than 9306, throughout this period of time indicates what typically goes on with contractors. Let me demonstrate that to you. It's basically a robbing Peter to pay Paul scenario. Trying to underbid everybody else that's in the business to try to get to job A, job B, and job C, as an example, and to try to get job A, they under bid below what is really—it's going to take to build it. Knowing or hoping that this consultation or this deliberation that we're having with our potential client B will come in soon enough to where we can also underbid that one possibly, or whatever, and then hoping to get that job as well and that draws on this business, this second home, this second contract will come in soon enough to start covering for some of the deficiencies in job A. And then it—pretty soon it's a house of cards, and it gets bigger and bigger because they keep having to start covering until they can get their business on the ground, hopefully. It's a wild speculation on her part hoping that she can build her business and finally get ahead of the game. . . . She couldn't stay on top of the game, but that is in fact an indication to me an intent to defraud from the very beginning, and this is what typically happens, and this is why this is a very important case to

---

8. Defense Exhibit 153 is a summary of the funds received and the expenditures made by Golden Eagle Custom Homes, Inc. in connection with the Trippe project. This summary

shows that expenditures exceeded receipts by $9,606.40. When Defense Exhibit 153 was offered and admitted in evidence, the prosecutor stated "No objection, your Honor."

Comal County that is experiencing tremendous growth. Growth faster than any other county throughout the region here surrounding Bexar County and San Antonio.

The State's argument demonstrates a misunderstanding of the provisions of the statute.[9]

The State also argues, "Another indication of how the victim's construction funds could have been improperly retained or diverted was through 'payments' of over $15,000 made to a Jim Cook much of which was paid *prior* to execution of the construction contract ... two [of the] checks were immediately endorsed back to appellant.... Even to the untrained eye, Jim Cook inferentially looks like a straw man who served as a conduit for appellant to fraudulently funnel cash out of the Golden Eagle corporate veil. This, the jury could have properly deduced the requisite intent to defraud." The evidence does not support the State's argument of what "could have been" or what "inferentially looks like a straw man." Cook was employed by appellant's corporation Golden Eagle and relative to the Trippe project gave advice and helped work-out the site layout, the location of the utilities, and the septic system. Cook calculated the framing and "framing loads" for the house. Most of this work was done prior to the formal signing of the contract. Cook was not a witness. The State's argument is unwarranted. Nothing in the record shows that payments to Cook were not for expenses directly related to the Trippe project. The payments to Cook appear to be legitimate expenses in "obtaining [and] completing the job." Tex. Att'y Gen.Op. JM–945 (1988). The evidence relating to the payment of Cook fails to show an intent to defraud.

The State also argues that appellant's expenditures of trust funds not made for "sticks and bricks" shows an intent to de-

fraud. The State claims that fees for an artist's picture of the Trippe house and a municipal fine levied because of an untimely request for an inspection are examples of expenditures not made for "sticks and bricks" and evidence an intent to defraud. The statute does not require that all expenditures be for "sticks and bricks." Trust funds may be used for other expenses related to the construction project.

In essence the State failed to prove that appellant misapplied or diverted construction trust funds. Viewing the evidence in the light most favorable to the jury's verdict, the jury could not rationally have found beyond a reasonable doubt that appellant with the intent to defraud misapplied and diverted construction trust funds in violation of the construction trust fund statute. Appellant's fourth point of error is sustained. It is unnecessary for us to rule on the other points of error presented.

We reverse the judgment of conviction and render a judgment of acquittal. *See Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).

---

**9.** *See Boyle*, 819 F.2d at 586. The *Boyle's* court's analysis of the statute is diametrically opposed to the State's argument in this case. *See supra* pp. 912–13.