**John David WRAY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 982–82.**

Court of Criminal Appeals of Texas, En Banc.

March 5, 1986.

Ian Inglis, Austin, for appellant.

Tony Hileman, Dist. Atty., Jefferson, and Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

TOM G. DAVIS, Judge.

A jury found appellant guilty of murder and assessed 20 years.[1] The Texarkana Court of Appeals affirmed in a published opinion. *Wray v. State*, 642 S.W.2d 27 (Tex.App.1982). The Court of Appeals held that the evidence was sufficient to prove the underlying felony of aggravated assault, that the variance between the pleading and the proof did not surprise or mislead appellant to his prejudice, that the felony murder merger doctrine is inapplicable to the case, and that alleged fundamental error in the charge could not be re-

viewed on appeal because there was no objection at trial. We granted appellant's petition for discretionary review to examine these holdings.

Omitting the formal parts, the indictment charged that appellant did,

"intentionally and knowingly commit the felony offense of aggravated assault by then and there using a deadly weapon, to wit, a shotgun, to threaten another, Mary Ann Henderson, with imminent bodily injury by pointing said deadly weapon at Mary Ann Henderson and while in the course of and furtherance of the commission of said offense did then and there commit an act clearly dangerous to human life, to wit; did then and there shoot said deadly weapon at an individual, Maggie Beth Henderson, and did thereby cause the death of the said Maggie Beth Henderson."

The evidence showed that on the night of the killing two young men were visiting the Henderson family at their home in Jefferson. Members of the household and their two guests were watching television when appellant knocked at the door. Mary Ann Henderson had dated appellant in the past. She answered the door and had a brief conversation with appellant. Afterward, she cried and appeared upset. When appellant came to the door a second time a few minutes later, Mary Ann summoned her cousin, Jeff Carter (one of the guests). Carter testified, in pertinent part, as follows:

"Q. What did [Mary Ann] say?

"A. She said, 'Jeff, come in here a minute.' And I could tell that she was upset and so I walked in there to the doorway.

"Q. What did you see?

"A. I saw [appellant] standing there holding the shotgun.

"Q. How was he holding the shotgun?

"A. He had it kind of pointing down to the ground.

[Witness is asked to demonstrate how and does so.]

---

1. Trial was held in Morris County on a change of venue from Marion County.

"Q. Okay. Fine. That's fine. Down to his side. What happened then?

"A. Then I told him that—to put the gun away, that nobody needed any trouble.

"Q. What happened next?

"A. *And then he, you know, lifted the gun up and pointed it at me.*

"Q. *At you?*

"A. *Yes, sir.*

"Q. What happened then?

"A. Then I grabbed the gun barrel and pushed it away and slammed the door on it.

"Q. What happened next?

"A. Well, I don't know, you know, I can't really say if there were any words said or anything like that but seemed like all at once Beth ran around the corner.

"Q. Who is 'Beth'?

"A. 'Beth' was Mary Ann's mother [the murder victim].

"Q. Okay.

"A. And she ran into the room around the corner and I, you know, saw out of the corner of my eye it was her and the gun went off and strike her in the head."

The alleged victim of the aggravated assault, Mary Ann Henderson, testified in pertinent part as follows:

"Q. All right. What happened when you opened the door?

"A. I saw the gun and I just—I kind of pushed the door to, I didn't close it all the way, I just pushed it to and I called Jeff and I told him that he had a gun. And—and Jeff came in there and he told [appellant], he opened the door up and he told [appellant] that he didn't need any trouble, for him just to go on.

" . . .

"Q. Do you remember the shotgun sticking through the door?

"A. Yes sir.

"Q. You don't know how it got open that second time?

"A. No, sir.

"Q. Do you remember when your mother came into the room?

"A. Yes, sir.

"Q. What happened then?

"A. All I can remember is her running into the room and then I remember her approaching the door and the next thing I knew I was on the floor and I didn't know what had happened."

The Court of Appeals opinion states, "Admittedly, there is no evidence that [appellant] took aim or pointed the gun at Mary Ann Henderson." That Court concluded, however, that because appellant had not shown surprise or that he was misled to his prejudice, the variance is not fatal to the conviction.

■ If a variance exists between the allegations and the proof, it may render the evidence insufficient to sustain the conviction. *Franklin v. State,* 659 S.W.2d 831 (Tex.Cr.App.1983); *Seiffert v. State,* 501 S.W.2d 124 (Tex.Cr.App.1973). Unnecessary words or allegations in an indictment may be rejected as surplusage if they are not descriptive of that which is legally essential to the validity of the indictment. *Windham v. State,* 638 S.W.2d 486 (Tex. Cr.App.1982). But where the unnecessary matter is descriptive of that which is legally essential to charge a crime, it must be proven as alleged even though needlessly stated. *Weaver v. State,* 551 S.W.2d 419 (Tex.Cr.App.1977).

In the instant case, we must determine whether the additional allegation in the indictment—"by pointing said deadly weapon at Mary Ann Henderson"—is descriptive of that which is legally essential or merely surplusage. *Burrell v. State,* 526 S.W.2d 799 (Tex.Cr.App.1975).

*Johnson v. State,* 384 S.W.2d 885 (Tex. Cr.App.1964), was a prosecution for assault with intent to murder. The indictment alleged that defendant "did then and there unlawfully with malice aforethought *shoot at* Freddie Short with a shotgun with the intent then and there to murder the said Freddie Short." This Court wrote, "An

indictment for assault with intent to murder need not allege the means used nor the manner of such use. [citations omitted.] The words 'shoot at' did not vitiate the indictment, but placed upon the state the burden of proving them."

*Burrell v. State,* supra, concerned the issue of whether the State's deletion of certain words from the indictment was an amendment of substance. This Court wrote, "In the instant case it was legally essential to charge the offense of assault to murder a peace officer to allege that an assault occurred and it was with intent to murder. In doing so, the grand jury alleged that the assault with intent to murder a peace officer was committed 'with his malice aforethought' and 'by shooting him with a gun.' These were not in and of themselves essential allegations, but as alleged were descriptive and explanatory of the assault and the intent." The Court concluded that the State's deletion of the two quoted allegations was an amendment of substance, and reversed.

■ We conclude that in the instant case, the allegation "by pointing said deadly weapon at Mary Ann Henderson" is descriptive of that which is legally essential to charge the offense of aggravated assault; specifically, the elements "threatens another with imminent bodily injury" (V.T.C.A. Penal Code, Sec. 22.01(a)(2)) and "uses a deadly weapon" (Sec. 22.02(a)(4), supra).

The evidence failed to show that appellant pointed the weapon at Mary Ann Henderson. The State was bound to prove this allegation. The judgment must be reversed for insufficient evidence and an acquittal ordered. *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978) and *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978); *Franklin v. State,* supra; *Cox v. State,* 608 S.W.2d 219 (Tex.Cr.App.1980); *Gibbs v. State,* 610 S.W.2d 489 (Tex.Cr.App.1980).

The judgment of the Court of Appeals is reversed and the cause is remanded to the trial court to enter a verdict of acquittal.