TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00674-CR






Abu Boika Kanneh, Appellant




v.




The State of Texas, Appellee







FROM THE DISTRICT COURT OF HARRIS COUNTY, 183RD JUDICIAL DISTRICT


NO. 801,897, HONORABLE WOODY DENSEN, JUDGE PRESIDING







 A jury found appellant Abu Boika Kanneh guilty of aggravated robbery with a
deadly weapon and assessed punishment at twelve years' confinement in the Texas Department
of Criminal Justice-Institutional Division. See Tex. Penal Code Ann. § 29.03(a) (West 1994). 
He appeals, arguing the evidence was legally insufficient to support his conviction. We will
affirm.

 Appellant, then nineteen years old, was indicted for aggravated robbery. The
indictment alleged he, while in the course of committing theft and with intent to obtain and
maintain control of the property, "intentionally and knowingly threaten[ed] and place[d] KIM
THAI-TRINH in fear of imminent bodily injury and death, and . . . did then and there use and
exhibit a deadly weapon, to-wit: A FIREARM." Appellant argues the evidence is legally
insufficient to prove he threatened or placed Kim Thai-Trinh in fear of imminent bodily injury or
death.


Factual background

 Mai Thi Thai, also known as Kim Thai Trinh ("Mrs. Trinh"), and her husband
own a convenience store in Houston. About 8:45 p.m. on Monday, November 30, 1998, a man
entered the store and bought a pecan pie from Mrs. Trinh, who was working the cash register at
the time. Mrs. Trinh clearly observed the man and made eye-contact with him. She noticed he
had a ski mask up on top of his head with the eye-holes off to the side. After he left, Mrs. Trinh
told her husband, Nguyen Trinh ("Mr. Trinh"), she thought the man was going to rob someone
because he was wearing a ski mask but the night was not that cold. Mrs. Trinh identified
appellant in the courtroom as the man who wore a ski mask on his head as he bought the pie. 

 About ten or fifteen minutes later, appellant reentered the store. At that time, Mr.
Trinh was working the cash register and was sitting down behind the counter watching television;
Mrs. Trinh was standing off to the side of the counter. Mrs. Trinh did not think appellant saw
her because she was standing behind a display that was taller than she was. Appellant pulled out
a gun and demanded money. Mr. Trinh stood up from behind the cash register and Mrs. Trinh
said she saw appellant's eyes and it appeared he was surprised she was not behind the register. 
Mr. Trinh pulled out a gun and shot at appellant, who ran from the store. Mrs. Trinh stated she
felt frozen and terrible when he pointed the gun at her husband and demanded money, and said
she just stood shaking and frozen in shock. The State asked, "Were you afraid that he might hurt
you or your husband?" Mrs. Trinh answered, "I don't believe so, sir." 

 Mr. Trinh also noticed appellant when he bought the pecan pie because he had on
a ski mask on a hot day. Mr. Trinh stated he paid extra attention because his son, an off-duty
police officer, had been killed during a robbery of the store a year earlier. Mr. Trinh was ten to
twelve feet from the cash register when appellant bought the pie and only saw the left side of
appellant's face at that time. Shortly thereafter, Mr. Trinh saw two men outside the store. 
Appellant entered the store, pointed the gun at Mr. Trinh's face, and demanded money; the other
man stayed outside the store. During the robbery attempt, appellant stood facing Mr. Trinh from
about two or three feet away. Mr. Trinh pulled his gun from below the counter and shot at
appellant because he was afraid his wife would be killed like his son. He testified the person who
bought the pie was the same man who tried to rob the store, and he identified appellant in the
courtroom as that man. Mr. Trinh testified the ski mask was still rolled up on top of appellant's
head when he attempted to rob the store. Mr. Trinh was afraid appellant would shoot him or his
wife. He said his wife was in shock, nervous, and could not move after the robbery.

 A police officer who responded to the Trinhs' emergency call stated they appeared
very shaken and upset, as if they had been put in fear for their lives. She took their statements
and broadcast their descriptions of the gunman and his companion. That same night, the police
picked up near the store a man resembling Mr. Trinh's description of the gunman's companion;
however, the Trinhs could not identify him. The police did not pick up anyone resembling the
gunman that night. The police contacted the mother of the man who resembled the gunman's
companion and described for her the gunman; in response, she gave the police appellant's name. 
The police then contacted the security officer at appellant's school who described appellant; his
description of appellant matched the Trinhs' description of the gunman. The Trinhs were shown
a photographic line-up that included appellant's photograph and Mrs. Trinh immediately identified
appellant as the gunman. Mr. Trinh was not able to make an identification from the photographic
line-up.

 Appellant's mother testified appellant lived with her and her husband in November
1998. She was at work the night of the robbery. She said appellant's father would have been
home with appellant while she was at work. She testified appellant was not allowed to go out on
school nights. She called home between 9:00 and 9:30 p.m. and spoke to her husband. She did
not speak to appellant, but her husband said appellant was in his room. Appellant's father also
testified that appellant was not allowed to go out on school nights. He testified he was positive
appellant was home with him all night on November 30, starting from about 5:30 p.m.

 Appellant testified that on November 30 he got home from school at about 4:00 or
4:30 p.m. and stayed home all night watching a football game. He denied leaving the house and
going to the convenience store. Appellant testified he had never owned a gun or a ski mask. 
Appellant admitted having been convicted of misdemeanor shoplifting. Appellant said he did not
believe the Trinhs were lying, but insisted they had misidentified him.


Discussion

 In one point of error, appellant contends the evidence is insufficient to support his
conviction because, assuming he was the gunman, there is no evidence he intentionally or
knowingly threatened or placed Mrs. Trinh in fear of imminent bodily injury or death, as alleged
in the indictment, or that he even knew she was present during the robbery. Appellant also argues
the evidence is insufficient to show Mrs. Trinh was actually put in fear of bodily injury or death.

 When reviewing the legal sufficiency of the evidence, we review the evidence in
the light most favorable to the verdict to determine whether any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443
U.S. 307, 319 (1979); Wilkerson v. State, 881 S.W.2d 321, 324 (Tex. Crim. App. 1994); Skillern
v. State, 890 S.W.2d 849, 879 (Tex. App.--Austin 1994, pet. ref'd). We review the entire
record--the evidence and all reasonable inferences therefrom--in assessing the sufficiency of the
evidence. See Teer v. State, 923 S.W.2d 11, 17 (Tex. Crim. App. 1996). The jury as trier of
fact is the sole judge of the credibility of witnesses and may believe or disbelieve all or any
portion of a witness's testimony. See Williams v. State, 692 S.W.2d 671, 676 (Tex. Crim. App.
1984); Skillern, 890 S.W.2d at 879. The State is bound by and must prove the allegations made
in the indictment, unless the allegations merely describe unnecessary elements of the offense. See
Upchurch v. State, 703 S.W.2d 638, 640 (Tex. Crim. App. 1985); Kirschner v. State, 997
S.W.2d 335, 340 (Tex. App.--Austin 1999, pet. ref'd). The name of the complainant is an
essential element of an indictment, not mere surplusage. See Williams v. State, 975 S.W.2d 375,
377 (Tex. App.--Waco 1998, pet. ref'd). It is not necessary to allege in an indictment that the law
of parties or transferred intent will be applied. See Planter v. State, 9 S.W.3d 156, 158 n.4 (Tex.
Crim. App. 1999); Norris v. State, 902 S.W.2d 428, 436 n.10 (Tex. Crim. App. 1995).

 Appellant argues the evidence is insufficient to show he intentionally and knowingly
threatened Mrs. Trinh. He contends the evidence indicates the gunman did not know Mrs. Trinh
was present during the robbery and therefore the gunman did not intentionally or knowingly
frighten or threaten her. We disagree.

 A person commits robbery if, in the course of committing theft and with intent to
obtain or maintain control over the property, he intentionally, knowingly, or recklessly causes
bodily injury to another or intentionally or knowingly threatens or places another in fear of
imminent bodily injury or death. See Tex. Penal Code § 29.02(a) (West 1994). A person
commits aggravated robbery if he commits robbery as defined above and causes serious bodily
injury to another or uses or exhibits a deadly weapon. See id. § 29.03(a). An act is intentional
if the actor's conscious objective or desire is to engage in the act or cause the result of the act. 
See id. § 6.03(a). A person acts knowingly if he is aware of the nature of his conduct or that the
circumstances exist, or when he is aware that his act is reasonably certain to cause the result. See
id. § 6.03(b). Therefore, the evidence is sufficient if it shows appellant either (1) had the
conscious objective or desire to place Mrs. Trinh in fear of imminent bodily harm or death or (2)
was aware that it was reasonably certain that his robbery attempt would place her in fear of
imminent bodily injury or death.

 The sufficiency of the evidence is measured against a hypothetically correct jury
charge. See Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); Kirschner, 997
S.W.2d at 340-41. Under the doctrine of transferred intent, a person is criminally responsible for
causing a result if the only difference between what actually occurred and what he desired,
contemplated, or risked is that a different person was injured, harmed, or otherwise affected. See
Tex. Penal Code Ann. § 6.04(b)(2) (West 1994).

 In this cause, a hypothetically correct jury charge would have included instructions
on transferred intent. See Manrique v. State, 994 S.W.2d 640, 642 (Tex. Crim. App. 1999)
(omitted transferred intent application paragraph read into jury charge under Malik); Lewis v.
State, 815 S.W.2d 560, 562 (Tex. Crim. App. 1991) (omission of transferred intent application
paragraph is "closely analogous" to omission of law-of-parties application paragraph); Howard
v. State, 966 S.W.2d 821, 824-25 (Tex. App.--Austin 1998, pet. ref'd) (hypothetically correct
charge would have included law-of-parties application paragraph).

 Of the cases appellant cites, all but one of them was decided before Malik, and only
one, which was overruled by Malik, truly applies to this case. In Garrett v. State, 749 S.W.2d
784 (Tex. Crim. App. 1986), the jury charge included an abstract explanation of the doctrine of
transferred intent but not a paragraph applying the doctrine to the specific facts. See 749 S.W.2d
at 788. It was held the State therefore had the burden of proving the defendant knowingly shot
the victim although she was aiming at another person, and the evidence was held insufficient to
support the conviction. See id. at 788-89. However, Garrett was overruled by Malik's holding
that the evidence is weighed against a hypothetically correct charge, not the charge as written. 
See Malik, 953 S.W.2d at 239; Marvis v. State, 3 S.W.3d 68, 75 (Tex. App.--Houston [14th Dist.]
1999, pet. granted). Post-Malik, the Garrett evidence would have been weighed against a jury
charge that included the application paragraph. See Manrique, 994 S.W.2d at 240.

 In Taylor v. State, 637 S.W.2d 929 (Tex. Crim. App. 1982), the indictment alleged
the defendant threaten the complainant with a handgun. See 637 S.W.2d at 929-30. The evidence
showed the defendant did not use a gun, although his accomplice did while robbing another
victim. See id. at 930-31. The complainant never saw the defendant exhibit a handgun, and the
evidence was held insufficient to support a conviction for aggravated robbery of the complainant. 
See id. at 933-34. Neither the defendant nor his accomplice were charged with aggravated
robbery of the victim to whom a gun was shown, and because the complainant never saw a gun,
the aggravated robbery charge did not fit the evidence. See id. In Richardson v. State, 834
S.W.2d 535 (Tex. App.--Houston [1st Dist.] 1992, pet. ref'd), the evidence showed the defendant
shot the victim in the head from behind and the victim was not threatened or placed in fear of
injury or death. See 834 S.W.2d at 537. The evidence, when measured against the submitted
charge authorizing conviction only if the victim was placed in fear, was insufficient to support the
conviction. See id. at 537 (citing Boozer v. State, 717 S.W.2d 608, 610-11 (Tex. Crim. App.
1984), overruled by Malik, 953 S.W.2d at 239-40)). In Richardson and Taylor, the complainants
did not suffer the threats or fear alleged by the indictments and the evidence did not comport with
the indictments.

 Similarly, in Wray v. State, 711 S.W.2d 631 (Tex. Crim. App. 1986), the
indictment alleged that the defendant threatened Mary Ann by pointing a shotgun at her and then
shot and killed Maggie Beth. See 711 S.W.2d at 632. The evidence showed the defendant never
pointed the gun at Mary Ann, and the evidence was held insufficient to support the conviction. 
See id. at 633-34. Finally, in Planter v. State, 9 S.W.3d 156 (Tex. Crim. App. 1999), the
indictment alleged the defendant "requested, commanded and attempted to induce" another to kill
the victim. See 9 S.W.3d at 157-58. However, the evidence showed the defendant attempted to
request, command or attempt to induce the other person to pay the defendant to kill the victim. 
See id. at 159. It was held the evidence did not comport with the conduct alleged in the
indictment and was therefore insufficient to support the conviction. See id.

 The cause at hand is not one in which the evidence does not comport with the
indictment. Mrs. Trinh was present and witnessed the robbery attempt. She was placed in fear
of bodily injury or death, as opposed to the victim in Richardson, and she saw the gun being
exhibited, as opposed to Taylor. The indictment does not allege appellant pointed the gun at her,
as was the case in Wray. There is no question here that appellant committed some crime other
than aggravated robbery, as in Planter. When weighed against a jury charge containing an
instruction on transferred intent authorizing the jury to convict appellant if the only difference
between what he desired, contemplated, or risked was that Mrs. Trinh, not Mr. Trinh, was placed
in fear of bodily injury or death, the evidence is legally sufficient to support the jury's guilty
verdict.

 Further, even without reading a transferred intent instruction into the jury charge,
we believe the evidence is sufficient to support the conviction. See Hull v. State, 871 S.W.2d
786, 789 (Tex. App.--Houston [14th Dist.] 1994, pet. ref'd) (defendant shot at car and killed an
occupant; not necessary to use transferred intent to convict defendant of murder because he knew
there was a substantial risk of killing someone in car when he shot); Michel v. State, 834 S.W.2d
64, 68-69 (Tex. App.--Dallas 1992, no pet.) (pre-Malik case in which defendant was convicted of
aggravated robbery of store manager who was inside an office and unknown to defendant who
threatened to shoot through office door; lack of transferred intent application paragraph meant jury
was not authorized to convict under transferred intent but evidence was sufficient to show
defendant knowingly or intentionally threatened whoever was behind locked door).

 While Mrs. Trinh stated she did not think appellant saw her, other evidence
indicates appellant was aware she was there and would be frightened into giving him money. 
Appellant bought a pie from Mrs. Trinh and then returned a short fifteen minutes later to rob the
store. Appellant looked surprised when Mr. Trinh stood up behind the cash register, rather than
Mrs. Trinh. Mrs. Trinh could see appellant from where she stood at the end of the counter and,
while she might not have been aware of it, the jury could reasonably infer that he could also see
her. Viewed in the light most favorable to the verdict, the jury could reasonably have found
appellant knowingly threatened or placed Mrs. Trinh in fear of imminent bodily injury or death.

 Appellant further argues the evidence is insufficient to show Mrs. Trinh was placed
in fear of imminent bodily injury and death. Again, we disagree.

 Mrs. Trinh's testimony was somewhat confusing due to a language barrier. When
asked if she was afraid appellant would shoot her or her husband, she replied, "I don't believe
so, sir." However, she also testified she stood shaking and felt frozen and terrible when appellant
pointed the gun at her husband. Mr. Trinh testified his wife was in shock after the robbery
attempt, and the police officer who responded to the robbery stated both Trinhs were shaken and
appeared to have been badly frightened by the robbery attempt. Both Trinhs referred to their
son's death a year ago in another robbery at the store. Viewed in the light most favorable to the
verdict, the jury could have found Mrs. Trinh was put in fear of bodily harm or death.

 We overrule appellant's point of error and affirm the district court's judgment.



 


 Lee Yeakel, Justice

Before Justices Jones, Yeakel and Patterson

Affirmed

Filed: June 22, 2000

Do Not Publish



evidence showed the defendant attempted to
request, command or attempt to induce the other person to pay the defendant to kill the victim. 
See id. at 159. It was held the evidence did not comport with the conduct alleged in the
indictment and was therefore insufficient to support the conviction. See id.

 The cause at hand is not one in which the evidence does not comport with the
indictment. Mrs. Trinh was present and witnessed the robbery attempt. She was placed in fear
of bodily injury or death, as opposed to the victim in Richardson, and she saw the gun being
exhibited, as opposed to Taylor. The indictment does not allege appellant pointed the gun at her,
as was the case in Wray. There is no question here that appellant committed some crime other
than aggravated robbery, as in Planter. When weighed against a jury charge containing an
instruction on transferred intent authorizing the jury to convict appellant if the only difference
between what he desired, contemplated, or risked was that Mrs. Trinh, not Mr. Trinh, was placed
in fear of bodily injury or death, the evidence is legally sufficient to support the jury's guilty
verdict.

 Further, even without reading a transferred intent instruction into the jury charge,
we believe the evidence is sufficient to support the conviction. See Hull v. State, 871 S.W.2d
786, 789 (Tex. App.--Houston [14th Dist.] 1994, pet. ref'd) (defendant shot at car and killed an
occupant; not necessary to use transferred intent to convict defendant of murder because he knew
there was a substantial risk of killing someone in car when he shot); Michel v. State, 834 S.W.2d
64, 68-69 (Tex. App.--Dallas 1992, no pet.) (pre-Malik case in which defendant was convicted of
aggravated robbery of store manager who was inside an office and unknown to defendant who
threatened to shoot through office door; lack of transferred intent application paragraph meant jury
was not authorized to convict under transferred intent but evidence was sufficient to show
defendant knowingly or intentionally threatened whoever was behind locked door).

 While Mrs. Trinh stated she did not think appellant saw her, other evidence
indicates appellant was aware she was there and would be frightened into giving him money. 
Appellant bought a pie from Mrs. Trinh and then returned a short fifteen minutes later to rob the
store. Appellant looked surprised when Mr. Trinh stood up behind the cash register, rather than
Mrs. Trinh. Mrs. Trinh could see appellant from where she stood at the end of the counter and,
while she might not have been aware of it, the jury could reasonably infer that he could also see
her. Viewed in the light most favorable to the verdict, the jury could reasonabl