Opinion issued June 30, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00310-CR

———————————

Erin Ashlyn Moffatt, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 405th District Court 

Galveston County, Texas



Trial Court Case No. 08CR3041

 



 

MEMORANDUM OPINION

          A
jury found Erin Ashlyn Moffatt guilty of the first degree felony offense of
murder of her mother, Jana Moffatt, and assessed punishment at 50 years’
confinement.[1]  On appeal, Erin contends that the evidence is
legally insufficient to support the jury’s guilt finding because a fatal
variance exists between the indictment and the evidence at trial.  Erin specifically asserts that the indictment
alleges strangulation by use of a cord, but that the evidence at trial
indicated strangulation by hand as the cause of death.  

We affirm.

Background

Dina Sparkman, Jana’s sister,
reported Jana missing to police.  Seven
days later and two days after Hurricane Ike made landfall in the surrounding
area, officers from the Brazoria County Sherriff’s Department discovered a body
in an open field.  A plastic trash bag
had been tied over a portion of the body which had undergone significant
decomposition.  In the days before
reporting her sister missing, Sparkman had repeatedly called Erin about Jana’s
disappearance.  At one point, Erin asked
Sparkman, “[W]hat do you want me to do? Go out there and look for my mother
with a shovel.”  Erin did not respond
when Sparkman questioned why she needed a shovel. 

An officer with the League City
Police Department went to the trailer Jana shared with Erin.  Erin told the officer that she had last seen
her mother on September 2, when they had fought and Erin had refused to buy her
mother methamphetamines.  Detective Beyer
of the League City Police Department later took a formal statement from Erin,
at which time she continued to deny any knowledge of her mother’s whereabouts.  Erin told Detective Beyer that while she did
not know her mother’s location, she had a bad feeling and admitted that she
told another person that she believed her mother was dead.  

Based on his interviews with Erin
and several other subjects, Detective Beyer sought and received a search
warrant for Erin’s trailer.  The officers
seized several feet of carpet from the trailer that had a conspicuous red
stain.  The day after officers executed
the search warrant, Detective Beyer interviewed Michael Cory Lewis, Erin’s
boyfriend at the time of her mother’s disappearance.  Lewis told Detective Beyer that Erin had
strangled her mother and that he had helped her dispose of the body in a
field.  Lewis accompanied Detective Beyer
to the field where police found the body. 


Detective Beyer issued a warrant
for Erin’s arrest.  Upon her arrest, Erin
made a recorded confession to police that she had killed her mother.  Erin claimed to have blocked the incident
from her memory, but stated that she had grabbed her mom and hurt her.  She stated, “I strangled my mom,” and when
asked with what she stated, “A f—ing cord,” indentifying a white extension cord from the trailer.  She further stated, “I pulled this cord, and
I don’t know what the hell . . . . I pulled it until she stopped breathing.”

She told police that Lewis had
helped her by holding Jana down while Erin strangled her.  Believing that inserting air into a person’s
blood stream killed them faster, Erin admitted that she stabbed her mother in
the neck with a syringe.  Erin described
how Jana bit her tongue almost completely off, causing her to bleed on the
carpet.  After Jana stopped breathing,
Erin stated they covered her head in a black trash bag, wrapped her in a rug,
and loaded her into the trunk of a car. 
They drove to an open grassy area and Lewis dumped Jana’s body.  

At trial, the medical examiner, Dr.
Steven Pustilnik, testified that the body had decomposed significantly and that
he could not discern any evidence of trauma from an external examination of the
body.  Dr. Pustilnik, however, identified
a fracture to the maxilla, which is the facial bone to the left of the nose,
and a fracture to the hyoid bones, which are two bones in the neck or voice
box.  Dr. Pustilnik testified that a
break in the hyoid bones, which form a horseshoe shape, results from
strangulation by squeezing the neck by hand. 
When asked if strangulation by a cord or rope would cause this type of
injury, Dr. Pustilnik responded:

A cord or rope generally
does not, does not exert the pressure by moving the end of the hyoid this way
and the end of the hyoid this way.  It is
a circumferential ligature.  So, you see
different injuries for those.  You see
basically soft tissue injuries.  And you
don’t see fractures of bones from a ligature [cord or similar strangulation
method] being put around somebody’s neck. 

 

Dr. Pustilnik went on to say that he “possibly” saw
soft tissue injuries on the body, but could not be entirely sure because of the
extent of decomposition.  Dr. Pustilnik
also testified that the damage to the thyroid cartilage was caused by something
sharp cutting across the voice box and that hypothetically a hypodermic needle
could cause such an injury.

Dr. Joan Bytheway testified as a
forensic anthropologist trained to identify injury patterns in skeletal remains.  Dr. Bytheway testified that the “number one
cause of hyoid fractures is manual strangulation with the second cause being
ligature strangulation [use of a cord or other instrument]. . . .”  Dr. Bytheway stated that she could not
exclude ligature strangulation, by cord or similar instrument, as a cause of
the hyoid break.  She also testified that
she also could not exclude strangulation by hand or arm.   

          The
remaining witnesses at trial included investigating law enforcement officers
and several witnesses who testified to statements by Erin that she wanted to
get rid of her mother.  One witness
testified to seeing Erin throw away what she believed to be a white rope in a
store parking lot.  After Lewis invoked
his Fifth Amendment right not to testify, another witness testified to what
Lewis told him about the murder and corroborated Erin’s confession to
police.  Erin’s testimony at trial
contradicted her confession, and she stated that Lewis strangled Jana by hand
before she helped him dispose of the body. 
She also stated she had no memory of confessing to police.  

          Erin
moved for directed verdict at the close of the State’s case based on the
testimony of Drs. Pustilnik and Bytheway. 
She asserted that the State had not proved an essential element as
alleged in the indictment, strangulation by cord.   The trial court denied the motion.  The jury found Erin guilty of murder and
assessed punishment at 50 years’ confinement. 
Erin timely filed this appeal.

Fatal Variance 

          In her sole issue, Erin
contends that the evidence is legally insufficient to support the jury’s guilt
finding because a fatal variance exists between the indictment and the evidence
presented at trial.  Specifically, she
asserts the evidence indicates Jana was strangulated by hands instead of
strangled with a cord as alleged in the indictment.

A.      Standard
of Review

This court reviews sufficiency-of-the-evidence challenges
applying the same standard of review enunciated in Jackson v. Virginia,
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979), regardless of whether an
appellant raises a legal or a factual sufficiency challenge.  See Brooks v. State, 323 S.W.3d 893,
912, 927–28 (Tex. Crim. App. 2010); see also Ervin v. State, 331 S.W.3d
49, 52–55 (Tex. App.—Houston [1st Dist.] 2010, pet.
ref’d).  Under this standard,
evidence is insufficient to support a conviction if, considering all the record
evidence in the light most favorable to the verdict, no rational fact finder
could have found that each essential element of the charged offense was proven
beyond a reasonable doubt.  See
Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Laster v. State, 275
S.W.3d 512, 517 (Tex. Crim. App. 2009).  The sufficiency-of-the-evidence
standard gives full play to the responsibility of the fact finder to resolve
conflicts in the testimony, to weigh the evidence, and to draw reasonable
inferences from basic facts to ultimate facts.  See Jackson, 443
U.S. at 319, 99 S. Ct. at 2789; Clayton v. State, 235 S.W.3d 772, 778
(Tex. Crim. App. 2007).  

We apply the Jackson
standard to the hypothetically correct jury charge.  Byrd v. State, 336 S.W.3d 242, 245 (Tex. Crim. App.
2011).  A hypothetically correct jury
charge is one that “accurately sets out the law, is authorized by the
indictment, does not unnecessarily restrict the State’s theories of liability,
and adequately describes the particular offense for which the defendant was
tried.”  Id. at 246 (quoting Malik v.
State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).  “But sometimes the words in the indictment do
not perfectly match the proof at trial.” 
Id.

B.      Fatal
Variance 

          “A
‘variance’ occurs whenever there is a discrepancy between the allegations in
the indictment and the proof offered at trial.” 
Id.  When a defendant raises a legal sufficiency
claim based upon a variance between the indictment and the evidence, the
variance must be material to render the evidence insufficient.  Gollihar
v. State, 46 S.W.3d 243, 257 (Tex. Crim. App. 2001).  A material variance is one that is likely to
prejudice the defendant’s substantial rights by (1) failing to give the
defendant notice of the charges or (2) allowing a second prosecution for the
same offense.  Byrd, 336 S.W.3d at 247; Fuller
v. State, 73 S.W.3d 250, 253 (Tex. Crim. App. 2002).  A court must conduct a materiality analysis
in all cases “that involve a sufficiency of the evidence claim based upon a
variance between the indictment and the proof.” 
Fuller, 73 S.W.3d at 253
(quoting Gollihar, 46 S.W.3d at
257).  

          We analyze the materiality
of the variance and the sufficiency of the evidence by “looking to the
essential elements of the particular criminal offense—the gravamen of the offense—and the hypothetically correct jury charge
under the specific indictment or information.” 
Byrd, 336 S.W.3d at 250.  For murder under Penal Code section
19.02(b)(1), “A person commits an offense if he . . . intentionally or
knowingly causes the death of an individual.” 
Tex. Penal Code Ann. §
19.02(b)(1) (West 2003).  The specific
indictment against Erin alleges, in relevant part, that she “intentionally or
knowingly cause[d] the death of an individual, namely, Jana Moffatt, by
strangling that said Jana Moffatt with a cord.” 
The jury charge echoed the indictment language that Erin strangled Jana
with a cord.  

          Erin
asserts that the State failed to prove beyond a reasonable doubt that she
strangled her mother with a cord because the evidence at trial indicated
strangulation by hand.  Erin relies on
the Dr. Pustilnik’s testimony that a cord or rope would not generally exert the
kind of pressure necessary for the hyoid break in Jana’s neck.  Erin also relies on Dr. Bytheway’s testimony
that she could not exclude strangulation by cord or hand as a method for
causing the injuries at issue. 

In addition to the testimony of the
medical examiner and forensic anthropologist, however, the trial court admitted
the video and audio recordings of Erin’s confession to police.  In her confession, she stated that she
strangled her mom with “A f—ing cord .
. . . I pulled this cord, and I don’t know what the hell . . . . I pulled it
until she stopped breathing.”  Erin
testified at trial that she had no memory of her confession, but the jury was
entitled to evaluate the weight and credibility to give her confession and
trial testimony respectively.  See Clayton, 235 S.W.3d at 778.  

Further, Dr.
Pustilnik’s testimony that “generally” this type of hyoid injury is caused by
hand does not conclusively negate Erin’s confession or Dr. Bytheway’s testimony
that she could not exclude a cord as a strangulation method.  The jury was free to resolve these conflicts
in the evidence.  Edwards v. State, No. 01-05-00855-CR,
2006 WL 3513635, at *1 (Tex. App.—Houston [1st Dist.] Dec. 7, 2006, no pet.)
(holding that jury free to resolve conflicts in evidence when indictment
alleged strangulation by hand and medical examiner testified the complainant
had been strangled by hand, but other witnesses testified defendant had used a
cord).

Erin relies on Wray v.
State, 711 S.W.2d 631, 633 (Tex. Crim. App. 1986), for the proposition that
the State must prove language in an indictment that is legally essential to charge
the offense in question.  The indictment
in Wray alleged the offense of
aggravated assault by intentionally pointing a deadly-weapon at the
complainant, but the evidence at trial demonstrated that the defendant never
pointed the shotgun at the complainant.  Id. 
The Court found that pointing the deadly-weapon at the complainant was
necessary to elevate the assault to aggravated assault and satisfy the element
of “threatens another with imminent bodily injury.”  Id.
at 634.  Here, the essential elements of
murder are “intentionally or knowingly
causes the death of an individual.”  Tex. Penal Code Ann. §
19.02(b)(1).  Unlike the threat element
of aggravated assault in Wray, proof
of the specific method of strangulation used to cause death is not an essential
element of murder.  

We cannot say a variance exists
between the indictment and the evidence presented at trial.  See
Megas v. State, 68 S.W.3d 234, 241 (Tex. App.—Houston [1st Dist.] 2002,
pet. ref’d) (holding no fatal variance and not material when indictment alleged
death caused by collision with concrete barrier and testimony at trial showed
that collision caused car to flip and crush complainant).  Even assuming a variance
exists, such a variance was not material. 
Id.  The indictment fully apprised Erin that the
State accused her of murder by strangulation. 
Nothing in the record indicates Erin did not have notice of the charged
offense or that she was surprised by the proof at trial, beyond her testimony
that she did not remember making the confession.  See
Compton v. State, No. 01-06-00281-CR, 2007 WL 4462575, at *4 (Tex.
App.—Fort Worth Dec. 20, 2007, no pet.) (holding defendant had notice of
charges when indictment alleged defendant struck complainant in head causing
victim to fall and at trial evidence showed defendant pushed complainant).  Finally, such a variance between strangling
the same complainant by hand or by cord would not subject Erin to another
prosecution for the same offense.  Compare Bailey v. State, 87 S.W.3d 122,
126, 129 (Tex. Crim. App. 2002) (affirming court of appeals holding that
defendant was subject to another prosecution under second indictment after
acquittal for fatal variance when second indictment listed a different owner of
stolen property), with Fuller, 73
S.W.3d at 254 (holding variance would not subject defendant to another
prosecution when indictment and jury charge for offense of injury of elderly
individual listed “Olen M. Fuller” as complainant and proof at trial only
referred to “Mr. Fuller” or “Buddy”).  

Conclusion

          We
overrule Erin’s sole issue and affirm the judgment of the trial court.

 

 

 

                                                                   Harvey
Brown

                                                                   Justice


 

Panel
consists of Chief Justice Radack and Justices Sharp and Brown.

Do
not publish.   Tex. R. App. P. 47.2(b).











[1]           See
Tex. Penal Code Ann. §19.02(b)(1)
(West 2003).