NUMBER 13-22-00256-CR
COURT OF APPEALS
THIRTEENTH DISTRICT OF TEXAS
CORPUS CHRISTI – EDINBURG


OSCAR OSVALDO BARAJAS JR.
A/K/A OSCAR OSVALDO BARAJAS,                              Appellant,

v.

THE STATE OF TEXAS,                                        Appellee.

On appeal from the 36th District Court
of Aransas County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Silva and Peña
Memorandum Opinion by Chief Justice Contreras**

Appellant Oscar Osvaldo Barajas Jr. a/k/a Oscar Osvaldo Barajas was convicted of aggravated assault with a deadly weapon, a second-degree felony, and deadly conduct by discharge of a firearm, a third-degree felony. *See* TEX. PENAL CODE ANN. §§ 22.02(a)(2), 22.05(b)(2). He was sentenced to concurrent ten- and five-year prison

terms for the respective offenses. On appeal, Barajas argues: (1) a material variance existed between the indictment and the proof at trial regarding the aggravated assault offense, rendering the evidence legally insufficient to support conviction; and (2) the court erred by submitting the aggravated assault charge to the jury. We affirm.

## I.    BACKGROUND

An Aransas County grand jury returned an indictment alleging that Barajas, on or about September 27, 2021: (1) "intentionally, knowingly[,] or recklessly sh[ot] Don Gaines with a firearm, and did then and there use or exhibit a deadly weapon, namely a firearm, during the commission of the assault" (Count 1); and (2) "discharge[d] a firearm at or in the direction of a habitation, and . . . was then and there reckless as to whether the habitation was occupied" (Count 2).

At trial, Gaines testified that in the early morning of September 26, 2021, he observed an argument between his neighbors Ace Montgomery and Leon Anderson outside his home in Rockport. According to Gaines, Montgomery was yelling racial slurs at Anderson and then punched him. Gaines testified that, when his son David came out of the house, David saw Anderson's necklace on the ground next to Montgomery's Mercedes and went to retrieve it; Montgomery then punched David. Gaines said he grabbed David and Montgomery and all three men fell into a ditch. At that point, police arrived and the parties dispersed. However, as he and his wife were trying to go back to sleep, Gaines heard a "bunch" of gunshots and "the bullets just started running in through the wall." Gaines was shot in the foot and began bleeding profusely. He stated that the injury hurt and that it required surgery.

Fernanda Moctezuma testified she lived with Montgomery in her house across the

2

street from Gaines's residence. She observed the fight between Montgomery and Anderson. At the time of the fight, Barajas was inside her house. Moctezuma stated that, when Montgomery came back inside her house after the fight, he had visible injuries, and Barajas saw those injuries. At some point, Barajas left the house and Moctezuma fell asleep. She woke up when she heard multiple gunshots which she thought were directed at her house. Later, police came to search the house and to ask about Montgomery's whereabouts. Eventually, Montgomery returned to the house in a car driven by Juan Arguello, at which point police arrested both Montgomery and Arguello. On cross-examination, she agreed with defense counsel that Gaines, David, and Anderson "jumped" Montgomery.

Phone records introduced into evidence showed that Montgomery called Barajas at 4:30 a.m.—around eight minutes before the shooting occurred. Investigation also revealed that Montgomery called Arguello at around 5:54 a.m. and again at around 6:08 a.m. Arguello testified that he went to pick up Montgomery at Barajas's house at around 6:00 a.m. When he went inside Barajas's bedroom, he saw a black "assault rifle" against a wall. He then brought Montgomery back to Moctezuma's house, where he and Montgomery were arrested.

Barajas's roommate Clayton Lambert testified that he saw Barajas with a black "AR" when Barajas moved in with him in around March of 2021. Lambert conceded that he told police on September 28, 2021, that Barajas "said he was going to dip out because things were getting hot." Police impounded Barajas's black BMW, which was parked outside Lambert's house. A search of the BMW revealed two .223-caliber shell casings, which were consistent with having been fired from an assault rifle.

3

Barajas was interviewed by police after he was arrested. At first, Barajas claimed not to be involved with the shooting; then, he said he was a passenger in the car and Montgomery was the driver and the shooter. Barajas told police that Montgomery used an "AR P"—i.e., an AR pistol, which is an AR-15-style rifle modified to have a shorter barrel and no buttstock. No firearm was recovered by police.

The jury was instructed on the law of parties. *See* TEX. PENAL CODE ANN. § 7.02(a)(2) ("A person is criminally responsible for an offense committed by the conduct of another if[,] . . . acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense . . . ."). It found Barajas guilty on both charges and assessed punishment as set forth above. This appeal followed.

## II. DISCUSSION

### A. Material Variance

By his first issue, Barajas contends that the evidence was legally insufficient to support his conviction for aggravated assault with a deadly weapon because there was a material variance between the allegations in the indictment and the proof adduced at trial. His complaint stems from the fact that Count 1 of the indictment failed to explicitly allege that Gaines suffered bodily injury. *See id.* § 22.02(a)(2) (stating that a person commits aggravated assault "if the person commits assault as defined in [§] 22.01 and . . . uses or exhibits a deadly weapon during the commission of the assault"); *id.* § 22.01(a)(1) (stating that a person commits assault "if the person . . . intentionally, knowingly, or recklessly *causes bodily injury* to another" (emphasis added)).

In reviewing the sufficiency of the evidence to support a conviction, we consider

4

the evidence "in the light most favorable to the verdict" to determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020). Sufficiency is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Curlee v. State*, 620 S.W.3d 767, 778 (Tex. Crim. App. 2021) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). A hypothetically correct jury charge "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.* (citing *Malik*, 953 S.W.2d at 240). "The law 'authorized by the indictment' consists of the statutory elements of the offense as modified by the indictment allegations." *Id*.

"If a variance exists between the allegations and the proof, it may render the evidence insufficient to sustain the conviction." *Wray v. State*, 711 S.W.2d 631, 633 (Tex. Crim. App. 1986). "In a variance situation, the State has proven the defendant guilty of a crime, but has proven its commission in a manner that varies from the allegations in the charging instrument." *Gollihar v. State*, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001). A variance requires reversal and judgment of acquittal only when it is prejudicial to a defendant's substantive rights. *Id.* at 248. In determining whether substantial rights have been prejudiced, we ask (1) "whether the indictment, as written, informed the defendant of the charge against him sufficiently to allow him to prepare an adequate defense at trial," and (2) "whether prosecution under the deficiently drafted indictment would subject the

5

defendant to the risk of being prosecuted later for the same crime." *Id.*[1]

In this case, Count 1 of the indictment failed to allege all of the essential elements of aggravated assault because it did not allege that Barajas, either as a principal or as a party, caused bodily injury. *See* TEX. PENAL CODE ANN. §§ 22.01(a)(1), 22.01(a)(1).[2] Pursuant to the Texas Court of Criminal Appeals' decision in *Studer v. State*, it is "possible . . . for a defendant to be convicted on the basis of an indictment that does not allege all of the elements of the offense." *Fisher v. State*, 887 S.W.2d 49, 55 (Tex. Crim. App. 1994) (first citing *Studer v. State*, 799 S.W.2d 263 (Tex. Crim. App. 1990); then citing *State v. Oliver*, 808 S.W.2d 492, 493–94 (Tex. Crim. App. 1991) (holding that an indictment which failed to allege a culpable mental state was still an "indictment" conferring jurisdiction, and the defect was waived); and then citing *Rodriguez v. State*, 799 S.W.2d 301, 302–03 (Tex. Crim. App. 1990) (same)), *overruled on other grounds by*

---

[1] The dissent purports to apply *Gollihar* and would find a material variance, but it does not apply these factors.

[2] Barajas did not object to the indictment prior to trial; therefore, he waived any complaint as to the lack of an essential element in the indictment, and he does not bring any complaint regarding the indictment on appeal. *See Studer v. State*, 799 S.W.2d 263 (Tex. Crim. App. 1990) (noting that defects of substance or form contained in an indictment must be objected to at trial or are waived, and that a defect of substance includes the omission of a required element or elements of the offense); *see also* TEX. CODE CRIM. PROC. ANN. art. 1.14(b) ("If the defendant does not object to a defect, error, or irregularity of form or substance in an indictment or information before the date on which the trial on the merits commences, he waives and forfeits the right to object to the defect, error, or irregularity and he may not raise the objection on appeal or in any other postconviction proceeding."). Specifically, Barajas does not argue on appeal that the indictment failed to accuse him of a crime "with enough clarity and specificity to identify the penal statute under which the State intend[ed] to prosecute" such that it would not invoke the trial court's jurisdiction. *See Duron v. State*, 956 S.W.2d 547, 550–51 (Tex. Crim. App. 1997). We nevertheless observe that Count 1 of the indictment in this case, though failing to allege a "complete offense," contains far more detail about Barajas's complained-of conduct than the example given by the Texas Court of Criminal Appeals of a charging instrument so deficient that it might fail to invoke the court's jurisdiction. *See Teal v. State*, 230 S.W.3d 172, 183 (Tex. Crim. App. 2007) (Keller, P.J., concurring) (noting that an indictment which merely reads "John Smith intentionally" would not contain "enough information to allege an offense" and would not invoke the court's jurisdiction); *see also Walker v. State*, 594 S.W.3d 330, 339 (Tex. Crim. App. 2020) ("Had the indictment in this case been as deficient as the one envisioned by Presiding Judge Keller [in *Teal*] then we might characterize the engaging offense as the State does, as a 'non-existent' offense."); *Jenkins v. State*, 592 S.W.3d 894, 900 (Tex. Crim. App. 2018) (holding that when an indictment potentially charges a felony but is defective, a court may refer to the indictment's heading and other circumstances to determine whether the charging instrument effectively invokes felony jurisdiction).

*Malik*, 953 S.W.2d at 239–40; *see Ex parte Edwards*, 663 S.W.3d 614, 617 (Tex. Crim. App. 2022) (citing *Studer* approvingly and noting that, under Article V, § 12 of the Texas Constitution, "an indictment is still an indictment" conferring jurisdiction on the trial court "even if it has a defect of substance"). However,

> where an indictment facially charges a complete offense, it is reasonable to presume the State intended to charge the offense alleged, and none other. Consequently, where an indictment facially charges a complete offense, the State is held to the offense charged in the indictment, regardless of whether the State intended to charge that offense.

*Thomason v. State*, 892 S.W.2d 8, 11 (Tex. Crim. App. 1994); *see Sierra v. State*, 501 S.W.3d 179, 183 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (same); *see also Kirkpatrick v. State*, 279 S.W.3d 324, 327 (Tex. Crim. App. 2009) (implicitly rejecting appellant's contention that the court of criminal appeals "retreated" from its holding in *Thomason*); *Guerrero-Acosta v. State*, No. 13-17-00560-CR, 2018 WL 5832097, at *6 (Tex. App.—Corpus Christi–Edinburg Nov. 8, 2018, no pet.) (mem. op., not designated for publication). It follows that, "when the indictment facially charges a complete offense and the State presents evidence which convicts under a different theory than that alleged," the defendant's due process rights are violated "because the State has failed to prove beyond a reasonable doubt every fact necessary to constitute the crime with which [the] defendant was charged." *Thomason*, 892 S.W.2d at 11. In that situation, "we cannot presume a defect exists and *Studer* is simply not applicable." *Id.* n.5.[3]

---

[3] The dissent suggests that both *Studer* and *Thomason* have been abrogated by the more recent holding in *Malik* that sufficiency is measured with reference to a hypothetically correct jury charge, not the charge actually given. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). But a variance analysis calls for a comparison between the facts alleged in the charging instrument and the proof adduced at trial; it does not involve the jury charge at all. *See Gollihar v. State*, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001); *Wray v. State*, 711 S.W.2d 631, 633 (Tex. Crim. App. 1986). Accordingly, the holding in *Malik* does not affect the continued vitality of *Studer* and *Thomason*.

Barajas argues that the indictment for Count 1 "facially alleged the complete offense of [d]eadly [c]onduct" under Texas Penal Code § 22.05(b)(1). *See* TEX. PENAL CODE ANN. § 22.05(b)(1) (stating that a person commits the offense of deadly conduct "if he knowingly discharges a firearm at or in the direction of . . . one or more individuals"); *Thomason*, 892 S.W.2d at 11. He contends that "the material variance is fatal, and therefore warrants reversal, since the evidence at trial proved an offense different than the complete offense alleged in the indictment."

In response, the State notes that, though Count 1 of the indictment did not explicitly allege that Barajas caused Gaines to suffer bodily injury, it did specifically cite penal code § 22.02(a)(2), defining aggravated assault, in its header. The State also argues that Count 1 did not facially allege the "complete offense" of deadly conduct under § 22.05(b) because, though it alleged that Barajas "sh[ot] . . . Gaines," it did not allege that Barajas shot "at or in the direction of" Gaines. *See* TEX. PENAL CODE ANN. § 22.05(b)(1).

We agree with the State that Count 1 of the indictment did not allege the "complete offense" of deadly conduct as defined in § 22.05(b)(1) of the penal code. Count 1 alleged that Barajas "intentionally, knowingly[,] or recklessly" shot Gaines with a firearm, which would theoretically allow Barajas to be convicted even if he did not shoot "at or in the direction of" Gaines. *See id.* § 6.03(c) ("A person acts recklessly, or is reckless, with respect to . . . the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the . . . result will occur.").[4] This is inconsistent with

---

[4] For example, a defendant could fire a gun out of a car window aimlessly, or into the air or at the ground, or while spinning the gun around on his finger. If a person is shot as a result of this action, the defendant may be guilty of assault (because he recklessly caused bodily injury to another), but not deadly conduct as defined in § 22.05(b) (because he did not knowingly discharge a firearm at or in the direction of one or more individuals). *See* TEX. PENAL CODE ANN. §§ 22.01, 22.05(b)(1). Moreover, under this scenario,

the statutory definition of deadly conduct under § 22.05(b), which requires the "knowing" discharge of a firearm. *Id.* § 22.05(b); *see id.* § 6.03(b) ("A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result."); *see also id.* § 6.02(d) (classifying "knowing" mental state as relatively more culpable than "reckless"). Barajas does not suggest any other "complete offense" which Count 1 may have alleged,[5] and we observe none.

The dissent argues that an indictment alleging an "intentional, knowing, *or reckless*" shooting suffices to allege the "complete offense" of deadly conduct under § 22.05(b), which requires the "knowing" discharge of a firearm. By that rationale, an indictment alleging that a defendant "intentionally or knowingly caused the death *or discomfort* of an individual" would suffice to allege the "complete offense" of murder under § 19.02(b)(1). *See id.* § 19.02(b)(1) (providing that a person commits murder if he "intentionally or knowingly causes *the death* of an individual" (emphasis added)). With its use of the disjunctive "or" in its description of culpable mental states, the indictment transformed what would be an essential element of deadly conduct under § 22.05(b)—

the defendant shot the victim, but he did not necessarily shoot "at or in the direction" of the victim; thus, the dissent is mistaken when it claims that "[b]y alleging Barajas shot Gaines, the State alleged that Barajas discharged a firearm at or in the direction of Gaines." In fact, the evidence established that Barajas shot at Gaines's house, not necessarily at or in the direction of Gaines.

[5] In particular, Barajas does not argue that the indictment alleged a "complete offense" under penal code § 22.05(a). *See id.* § 22.05(a) ("A person commits an offense if he recklessly engages in conduct that places another in imminent danger of serious bodily injury."). Notably, under that statute, "recklessness and danger are presumed if the actor knowingly pointed a firearm at or in the direction of another," *id.* § 22.05(c), but there was no allegation or evidence to that effect in this case.

the "knowing" discharge of a firearm—into an optional element. The indictment therefore did not allege a "complete offense" as argued by Barajas.[6] *See Malik*, 953 S.W.2d at 239 n.4 (noting an indictment is "facially complete" if "it alleges all of the essential elements of a criminal offense").

Because Count 1 of the indictment did not facially allege a complete offense, its failure to allege an essential element of aggravated assault did not result in a variance between the indictment and the proof at trial, and it is not fatal to Barajas's conviction.[7] *See Thomason*, 892 S.W.2d at 11; *Studer*, 799 S.W.2d at 263. We overrule Barajas's first issue.

## B.    Jury Charge Error

By his second issue, Barajas contends that the jury charge contained reversible error because it "instructed the jury to return a guilty verdict for [a]ggravated [a]ssault with a [d]eadly [w]eapon, despite the indictment facially alleging the complete offense of

---

[6] The dissent expresses concern that our decision "would allow the State to include any offense in the jury charge, so long as the indictment did not include a facially complete offense." This is misleading. If an indictment does not facially allege a complete offense, it is incumbent upon the defendant to object to it prior to trial. *See* TEX. CODE CRIM. PROC. ANN. art. 1.14(b); *id.* art. 21.03 ("Everything should be stated in an indictment which is necessary to be proved."). Similarly, the defendant may object to the indictment if he believes it does not give him adequate notice of the charges against him. *See Curry v. State*, 30 S.W.3d 394, 398 (Tex. Crim. App. 2000) ("The charging instrument must convey sufficient notice to allow the accused to prepare a defense."). And for an offense to be included in the jury charge, there must have been evidence adduced at trial to support each essential element of it. *See* TEX. CODE CRIM. PROC. ANN. art. 36.14. So, it is true that, when the indictment fails to facially allege a complete offense, "any offense" may be later included in the jury charge—as long as the defendant first declined to object to the indictment prior to trial on any grounds, and as long as there is evidence adduced at trial to support each element of the included offense. It is not unjust or unreasonable to allow a jury charge instruction on a particular offense in this hypothetical scenario.

In any event, the result in this case is compelled by *Studer* and *Thomason*, and we may not disregard controlling precedent of the court of criminal appeals. *See State ex rel. Vance v. Clawson*, 465 S.W.2d 164, 168 (Tex. Crim. App. 1971) ("The Court of Criminal Appeals is the court of last resort in this state in criminal matters. This being so, no other court of this state has authority to overrule or circumvent its decisions, or disobey its mandates.").

[7] Barajas does not argue that the evidence was insufficient to support the jury's finding that he committed aggravated assault, either as a principal or as a party to the offense.

[d]eadly [c]onduct." *See* TEX. CODE CRIM. PROC. ANN. art. 36.14 (providing that the jury charge must "distinctly set[] forth the law applicable to the case"); *Fella v. State*, 573 S.W.2d 548 (Tex. Crim. App. 1978) (reversing conviction because "the charge of the trial court authorized the jury to find the appellant guilty . . . on a theory not alleged in the indictment"). This issue is dependent on Barajas's assertion that Count 1 of the indictment facially alleged the "complete offense" of deadly conduct, an argument which we have already rejected. Accordingly, we overrule Barajas's second issue.

### III.    CONCLUSION

The trial court's judgment is affirmed.

DORI CONTRERAS
Chief Justice

Dissenting Memorandum Opinion by
Justice Silva.

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
13th day of July, 2023.

11